ALBERT B. CRAFTS, LEON E. DANFORTH AND WALTER L. CLARKE, City Treasurer, For an opinion.

JANUARY 28, 1918.

PRESENT:   Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)   Taxation.   Assessment to Estate.*

Where various lots owned by X. at her decease, were after her death separately and severally assessed to the "X. estate," no division having been made of the same and no notice to the assessors having been given of any division or of the names of the persons holding the portions thereof; under the provisions of Gen. Laws, 1909, cap. 57, § 7, the assessment was proper.

*(2)   Taxation.   Undivided Estate.   Notice.*

Gen. Laws, R. I., 1909, cap. 57, § 7, provides that:   "Undivided real estate of any deceased person may be assessed to the estate, or heirs, or devisees of the deceased, generally, until a record of a division be made, or until they give notice to the assessors of the division and of the names of the persons holding the portions thereof."

Gen. Laws, R. I., 1909, cap. 60, § 14, provides:   "In case the collector shall advertise for sale any property real, personal or mixed, in which any person other than the person to whom the tax is assessed has an interest, he shall,

provided the interest of such other person appears upon the records of the town, leave a copy of the notice of such sale at the last and usual place of abode, or personally with such other person, if within this State, twenty days prior to the time of such sale."

*Held*, that in view of the express provisions for recording divisions and partitions of real estate (1. by mutual deeds of conveyance; 2. by proceedings in the probate court; 3. by proceedings for partition in the Superior Court) the words, "until a record of a division be made," used in Chapter 57, Section 7, mean a record in the land-evidence records of the town or city where the land is located and the words used in Chapter 60, Section 14, "provided the interest of such other person appears upon the records of the town" mean the land-evidence records of the town; therefore when assessors of taxes having made a proper assessment of lots to "estate of X," and when the city treasurer, such taxes being unpaid, advertised such lots for sale, there was no "other person" whose interest appeared "upon the records of said town" to whom the city treasurer was required to give notice under the provisions of Chapter 60, Sections 14 and 15.

*(3)   Taxation.   Notice.*

Gen. Laws, 1909, cap. 60, § 13 does not apply to the assessment of a tax to an estate of a deceased, but applies to a living person who is resident of this State, to whom the estate is taxed, and as to whom it provides for service of notice upon him personally or at his last and usual place of abode.

*(4)   Taxation.   Notice.   Probate Courts.*

Assessors of taxes are not bound under Gen. Laws, cap. 60, § 14, to take notice of such things as appear to be set forth in the proceedings of a probate court, relative to distribution of personal property, since they can in no sense be treated as an adjudication of the rights or interests of devisees of real estate under a will, which rights are entirely beyond the jurisdiction of the probate court in the proceedings for distribution of personal estate.

*(5)   Taxation.   Records of Wills.   Notice.*

The record in the probate court of a will, with regard to the title to and conveyance of real estate in the same town or city where the will is probated and recorded is all that is required to pass the title and permit conveyance thereof by the devisee; and the assessors and collector of taxes would be affected with notice of the will and its provisions through such probate and record; but where such will names no particular persons as devisees and makes no "division" of the real estate, the collector is not obliged to give any further notice of a levy and sale of the real estate than is given by publishing and the posting of notices.

*(6)   Taxation.   Deeds.   Notice.*

Gen. Laws, 1909, cap. 60, § 17, provides that "The deed of any real estate . . sold for the payment of taxes, shall vest in the purchaser, subject to the right of redemption, all the estate right and title the owner thereof had in and to such real estate at the time said tax was assessed, free from any interest or incumbrance thereon of any person to whom the notice required by the provisions of this chapter shall have been given."

*Held*, that where a tax was properly assessed to an estate the undisclosed and unrecorded owners of the real estate received all the notice they were en-

titled to through the published and posted notices of the levy and sale, and therefore the purchaser at such sale was entitled to a deed conveying the property to him, "free from any interest" of the owners.

CASE stated for an Opinion.

PARKHURST, C. J. The parties above named concur in stating a special case for the opinion of this court under General Laws, 1909, Chapter 289, § 20, as follows:

*"To the Honorable Supreme Court of the State of Rhode Island:*

"Albert B. Crafts of Westerly in Washington County in the State of Rhode Island, and Leon E. Danforth of the City and County of Providence in the State of Rhode Island, and Walter L. Clarke, City Treasurer of said City of Providence, concur in stating the following questions in the form of a special case for the opinion of this Honorable Court:

"FIRST: On the 16th day of February, A. D. 1917, the said Crafts and the said Danforth made an agreement for the sale by the said Crafts and the purchase by the said Danforth of certain real estate situated in the said City of Providence, a copy of which said agreement is hereunto annexed and made a part hereof.

"SECOND: That on searching the title it appeared to the said Danforth that the title to the said real estate was obtained by the said Crafts by tax sale, evidenced by tax deeds filed herewith.

"THIRD: That all said real estate belonged to Sarah E. Brown of said Providence at the time of her decease. She deceased on the 16th day of November, A. D. 1910.

"FOURTH: That the will of said Sarah E. Brown was duly probated and allowed and ordered recorded by and in the Municipal Court of said City of Providence on the 20th day of December, A. D. 1910, according to law, and that one Job F. Steere was duly appointed and qualified as executor of said last will and testament on said last mentioned day, and that he duly gave notice of his appointment in the newspapers, according to law, immediately thereafter.

"FIFTH: That on the 13th day of February, A. D. 1912, the said Steere having deceased, the Rhode Island Hospital

Trust Company was duly appointed administrator *cum testamento annexo de bonis non* upon said estate, and then and there duly qualified.

"SIXTH: That the time for presentation of claims against said estate has long since elapsed, and all bills presented have been duly paid.

"SEVENTH: That the final account of said Rhode Island Hospital Trust Company, as such administrator, was duly and legally allowed, and the personal estate was ordered distributed on the 2nd day of December, A. D. 1913, and has been duly distributed.

"EIGHTH: That said last will and testament has never been recorded in the land records of the said City of Providence.

"NINTH: That the persons entitled to said real estate covered by said contract do not appear and cannot be ascertained from said last will and testament.

"TENTH: That no record of division of said real estate among the devisees or heirs of said Sarah E. Brown, deceased, has ever been made, and that said devisees or heirs have never given any notice to the Assessors of Taxes of said City of Providence of any division, or of the names of the persons holding any title to said real estate, but said real estate has always remained undivided real estate of the said Sarah E. Brown Estate.

"ELEVENTH: That the City Council of the City of Providence in the State of Rhode Island, by an ordinance approved on the 9th day of May, A. D. 1914, ordered the assessment and collection of a tax on real estate and tangible and personal property of one dollar and sixty-five cents on each one hundred dollars of the value thereof, and on intangible personal property of forty cents on each one hundred dollars of the value thereof, and the same was ordered to be levied on the ratable property of said City, and to be collected on and between the first and twenty-second days of October, A. D. 1914, both days inclusive, and the Board of Assessors of said City did assess and apportion said tax on the inhabitants of said City, and the ratable property therein, at the time ordered by said City

Council, to wit, the fifteenth day of June, A. D. 1914, and said Board of Assessors did advertise the time and place of their meeting in the *Providence Daily Journal*, a newspaper published in said City, and did post up printed notices thereof in three public places in said City, for three weeks before assessing the same, requiring every person and body corporate liable to taxation to bring in to them a true and exact account of their ratable estate and describing and specifying the value of every parcel thereof, at said time and place, and said Board of Assessors did then and there assess each of said lots described in the deeds herewith filed to said Sarah E. Brown Estate separately and severally in accordance with said ordinance and said assessment, and the taxes on said lots being wholly unpaid, Walter L. Clarke, City Treasurer of said City, did give notice for three weeks in the *Providence Daily Journal*, a newspaper published in said City, and did post up printed notices in three public places in said City that the several lots described in said notices and in said deeds (of the levy upon which notice was therein given), or so much thereof as would pay said tax with interest, cost and expenses thereon, would be sold at public auction in the Municipal Court Room, City Hall, in said City, on the third day of June, A. D. 1915, at 10 o'clock, A. M., and said Walter L. Clarke, City Treasurer, did cause notice of said levy and time and place of sale as to each of said lots to be given according to law to persons whose names were found as distributees of the said personal estate of said Sarah E. Brown in the records of the Municipal Court of the said City of Providence according to the order for distribution and final account of said Rhode Island Hospital Trust Company, except two deceased, in which cases said notice was duly served on the heirs of the deceased, twenty days previous to said day of sale as to each of the said lots, and said Albert B. Crafts at said sale at public auction at the time and place aforesaid, being the highest bidder for each of said lots, severally sold, did purchase the said lots, paying the amount of said tax remaining unpaid, with interest, costs and expenses thereon, as to each of said lots; that thereupon the said Walter L. Clarke, by deed, duly made, executed,

acknowledged and delivered, conveyed to the said Crafts or assumed to convey to him and his heirs and assigns forever all the right, title and interest of the said persons to whom notice was given as aforesaid, giving a separate deed for each of said lots, herewith filed.

"The said Crafts claims that under the facts disclosed herein the real estate of said deceased, being undivided, could be and was properly assessed to the estate of said Sarah E. Brown, as there was no record of a division of the same having been made among the heirs or devisees, and there having been no notice to the Assessors of any such division or of the names of the persons holding title to said real estate, and that in fact it was impossible under the circumstances in any other way to have assessed or collected said taxes, and that no further notice than that given by publication in the newspapers by said City Treasurer was necessary.

"Said Danforth claims that under the decision in Thurston *vs.* Miller, 10 R. I., 358, the notice given was wholly insufficient to warrant the sale, and to make said deeds a valid conveyance of the right, title and interest that the said Sarah E. Brown possessed at the time of her death or that the said estate possessed at the time of the levying of said tax; and objects also that said deeds conveyed only the right, title and interest of certain persons named in said deeds, and do not convey the right, title and interest of the owners of said undivided real estate which they had at the time of the said levying and assessing of said tax.

"Said Crafts claims that he was entitled to a deed from the said City Treasurer of all the estate, right and title that the owner or owners of said real estate had in and to such real estate at the time said tax was assessed as aforesaid.

"Said Walter L. Clarke claims that the said Crafts was entitled to only such deeds as those herewith filed, conveying the right, title and interest of certain persons therein named, to whom notice was given according to law.

"The said Walter L. Clarke is willing to give such a deed as that claimed by the said Crafts if he is entitled to the same.

"The said Danforth is willing to carry out said contract of purchase for said lots provided the tax sale conveyed to the said Crafts the interest of the owners thereof, which they had at the time of said assessment of said tax.

"The right of redemption from said tax sale has never been exercised, no tender has ever been made thereunder; the parties, therefore, submit the following questions:

"FIRST:   Was it necessary to tax said lots except severally to the estate of Sarah E. Brown, deceased?

"SECOND:   Was it necessary to find out and give notice under Sections 13, 14, and 15, Chapter 60 of the General Laws, 1909, to the very numerous heirs or devisees of said Sarah E. Brown, of the said levy and sale, except by publishing it in said public newspapers and by posting up notices in three public places in said City?

"THIRD:   Is the said Crafts entitled to a deed from the said City Treasurer of all the estate, right and title that the owners of said lots had in and to the same at the time said tax was assessed?

"WHEREFORE, the parties hereto pray this Honorable Supreme Court will decide the questions submitted herein according to law and the facts submitted, and declare its opinion of the rights involved therein, under Chapter 289, Section 20, General Laws (R. I.) 1909.

ALBERT B. CRAFTS,<br>
LEON E. DANFORTH,<br>
WALTER L. CLARKE.<br>
<em>City Treasurer.</em>"

It may be said that in the briefs of the parties hereto it appears without dispute that by Section 22 of said will Sarah E. Brown provided that all the rest, residue and remainder of her estate and property real, personal and mixed of which she died seized, possessed or in any way entitled should go to her heirs at law and next of kin according to the statute of descent and distribution of the State of Rhode Island, to be divided among them in accordance with said

statute.   This statement somewhat amplifies the statement
contained in paragraph "NINTH" above quoted.   We refer
to this because the terms and provisions of said will are not
otherwise brought before us.

Several statutes quoted from General Laws of R. I., 1909,
must be quoted and considered in order to come to an
opinion in answer to the questions above set forth.   Parts
italicised by us are deemed to be of special importance.

Chapter 57.   "Sec. 4.   Taxes on real estate shall be as-
sessed to the owners, and separate tracts or parcels shall be
separately  described  and  valued  as  far  as  practicable."

.   .   .

(1) "Sec. 7.   Undivided real estate of any deceased person
may be assessed to the estate, or heirs, or devisees of the
deceased, generally, *until a record of a division be made, or
until they give notice to the assessors of the division, and of the
names of the persons holding the portions thereof.*"   .   .   .

It is agreed that these twelve lots were separately and
severally assessed, after the death of Sarah E. Brown, to the
Sarah E. Brown estate;  that Sarah E. Brown owned them
at the time of her death in 1910, and that no division has
ever been made of the same, and that no notice to the
assessors has been given of any division or of the names of
the persons holding the portions thereof.

We therefore answer the "FIRST" question submitted in
the negative;  the lots were properly assessed to the estate of
Sarah E. Brown.

Question "SECOND" is as follows:   "SECOND:  Was it
necessary to find out and give notice under Sections 13, 14,
and 15, Chapter 60 of the General Laws, 1909, to the very
numerous heirs or devisees of said Sarah E. Brown, of the
said levy and sale, except by publishing it in said public
newspapers and by posting up notices in three public places
in said City?"

The answer to this question depends upon the construction
to be placed upon the sections of Chapter 60 referred to
therein;  they read as follows:

(2)  "Sec. 13.   If *the person* to whom the estate is taxed be a resident of this state, the collector shall, in addition to the foregoing, cause notice of his levy, and of the time and place of sale, to be left at his last and usual place of abode, or personally served on him, at least twenty days previous to the day of sale.

"Sec. 14.   In case the collector shall advertise for sale any property, real, personal or mixed, in which *any person other than the person* to whom the tax is assessed has an interest, he shall, *provided the interest of such other person appears upon the records of the town,* leave a copy of the notice of such sale at the last and usual place of abode, or personally with such other person, if within this state, twenty days prior to the time of such sale.

"Sec. 15.   If *such other person* have no last and usual place of abode within this state, then a copy of said notice shall be sent by mail to such person, at his place of residence, if known, twenty days prior to the time of such sale."

Bearing in mind that the assessment of the tax here was to the estate of Sarah E. Brown, it is manifest that Section 13 does not here apply because that section evidently applies (3) to a *living* person, who is resident of this State, to whom the estate is taxed, and as to whom it provides for service of notice upon him personally or at his last and usual place of abode.

As to notice to resident or non-resident persons, other than the person assessed, having an interest in the property to be sold, under Section 14 the question whether such notice is required to be given depends upon the construction of the clause, "provided the interest of such other person appears upon the records of the town." It is contended on behalf of the city treasurer that the words, "records of the town," as applied to this case include not only the records of conveyances, mortgages, etc., of real estate and personal property and other records relating to attachments and liens upon real estate, etc., required to be kept in the town clerk's offices of the towns and in the office of the recorder of deeds

in the city of Providence, but are sufficiently broad to include also the records of proceedings in probate courts, including the records of proceedings in the Municipal Court (being the probate court) of the city of Providence; and that inasmuch as the proceedings of the Municipal Court of the city of Providence show that the personal estate of the late Sarah E. Brown has been, pursuant to a decree of distribution in said court, distributed under the terms of the will to a large number of persons named in said decree, and inasmuch as it appears (as counsel for the city treasurer argues) that the persons to whom the personal estate was distributed were the same persons who were entitled to this real estate under the terms of Section 22 of the will, counsel for the city treasurer claims that the interest of said persons in this real estate devised by said Sarah E. Brown, did appear "upon the records of the town," in accordance with the terms of Section 14 above quoted. We are unable to agree with this contention. It may be true that the same persons were entitled to a distribution of personal estate and to take this real estate as devisees under the will, either at the time of the death of Sarah E. Brown, November 16, 1910, or at the time of the decree of distribution of the personal estate, December 2, 1913; but the time of the assessment of this tax was June 15, 1914; the date of sale for unpaid taxes was June 3, 1915; it is quite manifest that between December 2, 1913 and the summer of 1915, by reason of death and consequent devises or inheritances of real estate among the very numerous persons named in the decree of the Municipal Court in 1913, even if at that time the persons named were all and the only persons entitled, it would not follow that at the time of the levy and sale, the same persons were entitled; or that it would have been safe for the assessors of taxes to rely upon such information as could be gathered from the proceedings of the Municipal Court. Be that as it may, we are satisfied, for other reasons to be set forth, that the assessors were not bound to take notice of such things as appear to be set forth in the pro-

ceedings of the Municipal Court, in this matter, and were not bound by them. The proceedings of the Municipal Court as to the distribution of personal estate have nothing to do with the title to real estate under the will; they may be erroneous and subject to appeal, or may stand as final if not appealed from in due time though erroneous; they can, in no sense be treated as an adjudication of the rights or interests of devisees of real estate under the will, which rights and interests were and are entirely beyond the jurisdiction of the Municipal Court in the proceeding for distribution of personal estate.

In construing the words "provided the interest of such other person appears upon the records of the town," as applied to real estate taxation, we must look to other provisions of our statutes to see what they mean. Referring back to Chapter 57, Section 7, above quoted, referring to taxation of undivided real estate "to the estate" . . . "of the deceased" we find that may be done "*until a record of division be made, or until they give notice to the assessors of the division, and of the names of the persons holding the portions thereof;*" and we are led to inquire, in what way may a "division" be made? Under our laws requiring records of conveyances of real estate to be made in the records of land–evidence in the town or city where, etc., in order that they may be valid in law against all persons (other than parties, and their heirs, devisees, etc., or those having notice thereof), we find three ways in which undivided real estate may be divided: (1) by mutual deeds of conveyance between the parties, duly executed and delivered, and recorded in the proper real estate records, and if not recorded, good only as between the parties, their heirs, devisees, etc., and those having notice (Chap. 253, § 2). Such a division duly recorded in the proper real estate records, or duly notified to the assessors, would be within the provisions of Chapter 57, Section 7, above quoted: (2) By proceedings in the probate court upon application by all the parties in interest for division of real estate (Chap. 316, § 10, *et seq*) where

procedure is set forth, including the appointment of commissioners to make "division," and requiring them to make report of the "division" (Sec. 16) "which report shall be passed upon by the court after notice, and, if finally established, shall be recorded in the records of land evidence in the several towns or cities wherein any of the lands lie;" this applies both to intestate real estate and to real estate holden in common by devise and would apply to such real estate "assessed to the estate, or heirs, or devisees of the deceased generally," under Chapter 57, Section 7, above quoted: (3) By proceedings for partition in the Superior Court either by writ of partition at law or by bill in equity under the provisions of Chapter 330; in that chapter procedure is provided for compelling partition of lands and interests in lands between joint tenants, coparceners or tenants in common; it provides for the appointment of commissioners to make partition, both in suits at law, and in suits in equity; it requires (Sec. 27, Sec. 28) that the commissioners, in either case "shall report their proceedings, with a plat of the *division* by them made" to the court, etc.; it then provides for entering judgment at law or decree in equity as the case may be upon the report, confirming the same, and further provides that "the report, plat and judgment" at law, or "the plat and decree" in equity "shall be recorded in the records of land-evidence in the town or towns in which such estate shall be" etc.

Again reference may be had to Chapter 294, Section 13, which reads as follows: "No proceeding in court, hereafter taken, whether by filing bill, petition, declaration, or other complaint, or rule of court, or other wise, and no final order, decree, or judgment, concerning the title to any real estate, in this state, or to any interest or easement therein, shall affect such title (excepting as to parties thereto and their heirs and devisees, and those having actual notice thereof) as to any rights acquired before notice of the filing, or entry, of the same shall be recorded in the records of land evidence in the town or city where such real estate is situated; such

notice to be copied in a book duly indexed and kept for that purpose. The notice shall briefly state the names of all the parties, the court wherein filed, the date of filing, and the substance of the bill, petition, declaration, or other complaint, rule, order, decree, or judgment, and a description of the real estate thereby affected, so far as may be necessary to warn any person subsequently dealing with the title to the land."

By the terms of these several statutes prescribing what shall be done in cases where division or partition of real estate holden in common is desired or required to be made according to law, it appears that before such division or partition can be made effectual and valid as against persons (other than the parties, their heirs, devisees, etc., and those having notice thereof), a record of the conveyance, or report of division or report and plat of partition is required to be made in the land-evidence records of the town or city where any of the land is located; and that it is expressly provided in Chapter 294, Section 13, last quoted, that court proceedings, orders, decrees and judgments, concerning title to real estate, etc., must likewise be recorded in the records of land evidence, etc.

We are of the opinion, in view of these express provisions for recording divisions and partitions of real estate, that the words "until a record of a division be made" used in Chapter 57, Section 7, above quoted, mean a record in the land-evidence records of the town or city where the land is located; and that the words used in Chapter 60, Section 14, viz.: "provided the interest of such other person appears upon the records of the town," the words "records of the town" mean the land-evidence records of the town; we are further of opinion that when the assessors of taxes in Providence, having in 1914 as we have shown, made a valid and proper assessment of taxes upon the lots here in question, to the estate of Sarah E. Brown, and when in 1915, the city treasurer, such taxes being unpaid, advertised such lots for sale, there was no "other person" whose interest appeared

"upon the records of said town" to whom the city treasurer was required to give notice under the provisions of Chapter 60, Sections 14 and 15.

With regard to the records of wills (Chaps. 306-311), it is to be noted that the statutes giving jurisdiction of the probate and recording of wills to probate courts, provide, Chapter 306, Section 5, that the probate clerk shall record all wills probated in the court; Chapter 310, Section 10, *et seq*, provides for the filing and record of a copy of a foreign will in any probate court in any town or city where the testator had estate, real or personal whereon the will may operate; and expressly provides, "that, as to real estate in towns other than that in which said copy is filed and recorded, the title shall not pass for the purposes of conveyance by the devisee until a certified copy thereof is recorded in the records of land evidence in such other town or city in which any such real estate is situated." There is no provision in Chapter 253, "Of the Conveyance of Estates," requiring that in all instances a will duly probated and recorded in the probate court of a town or city shall be recorded in the records of land-evidence of the town or city where the will is probated; but it is expressly provided in Chapter 254, "Of disposal of property by last will," by Section 42 as follows: "Sec. 42. Title to real or personal estate shall pass by will when such will has been finally proved: *Provided, however,* that title to real estate situated in any town or city of this state other than that in which the will is proved, shall not pass by will for the purpose of conveyance by the devisee until, in addition to such probate, a copy of such will as proved duly certified by the probate clerk, be recorded in the records of land-evidence in such other town or city. Any foreign will shall be recorded as provided in sections ten to fifteen, inclusive, of chapter three hundred ten, and section one, chapter three hundred eleven, and when finally allowed shall operate to pass the title to all lands in that town or city where such will is duly recorded as aforesaid, and in any other town or city in which

a duly certified copy thereof has been recorded in the records of land-evidence in such town or city, and not otherwise: *Provided, however,* that when any such will is duly proved, or proved and recorded, as aforesaid, title to lands as devised thereby shall relate back to the date of the death of the testator."

The result of these recording statutes, as above referred to, is that the record in the probate court of a will, with regard to the title to and conveyance of real estate in the same town or city where the will is probated and recorded is all that is required to pass the title and permit conveyance thereof by the devisee; while as to real estate situate in a town or city other than that where the will is probated, it is required that a copy of the will be recorded in the records of land-evidence of the town or city where the real estate is located.   It results from this that in the case before us, the probate and record of the will of Sarah E. Brown in Providence, was sufficient to pass title to her devisees as to her real estate in Providence; and that the assessors of taxes and the city treasurer would be affected with notice of the will and its provisions, through such probate and record; but it does not follow, that, in view of the fact that the will makes no "*division*" of real estate and names no particular persons as devisees, the assessors of taxes and the city treasurer were obliged to give any further notice than they are shown to have given, in the case as stated.

We therefore answer the "SECOND" question in the negative.

The "THIRD" question submitted to us is as follows: "THIRD:   Is the said Crafts entitled to a deed from the said City Treasurer of all the estate, right and title that the owners of said lots had in and to the same at the time said tax was assessed?"

The provisions relating to a deed of real estate sold for the payment of taxes are found in Chapter 60, Section 17, and are as follows:   "Sec. 17.   The deed of any real estate, or of any interest therein, sold for the payment of taxes,

made and executed by the sheriff or collector who shall sell the same, shall vest in the purchaser, subject to the right of redemption hereinafter provided, all the estate, right and title the owner thereof had in and to such real estate at the time said tax was assessed, *free from any interest or incumbrance thereon of any person to whom the notice required by the provisions of this chapter shall have been given;* and the recitals in such deed shall be evidence of the facts stated."

The "right of redemption" above mentioned no longer exists; no tender or repayment was ever made by the owners at any time after sale; and the time prescribed in Chapter 60, Section 18, had elapsed before the case was filed in this court.

We have already found that the owners of the undivided real estate of Sarah E. Brown, deceased, were not entitled to any notice other than the notice given by publication in the public newspaper and by posting in three public places. This involves the correlative statement that the undisclosed and unrecorded owners received all the notice that they were entitled to receive through the published and posted notices; and this satisfies the provision of the section above quoted which is italicised.

The city treasurer's deeds by their recitals which are evidence of the facts stated show that the city treasurer sold the several lots of land entire and not fractionally, *i. e.*, that he sold the whole lots and not a fractional interest therein; the notice to the owners being sufficient, we find that Mr. Crafts is entitled to deeds conveying the lots "free from any interest" . . . of the owners; this substantially answers the "THIRD" question in the affirmative.

The only case referred to by the parties on their briefs is *Thurston* v. *Miller,* 10 R. I. 358; the gist of that case so far as it relates to notice of a tax-sale is well stated in the syllabus as follows: "Where an estate was owned by several heirs, and a collector of taxes levied upon the entire estate and advertised it for sale for non-payment of taxes, and gave notice of the levy as required by Rev. Stat. cap. 40, § 12, to

only one of the heirs, *it was held*, that the sale was void for want of notice to the other heirs. *Semble*, that had the collector levied only on the interest of the heir who was notified, and advertised his interest for sale, the sale would have been good." *Thurston* v. *Miller* differs from the present case in that in *Thurston* v. *Miller* the tax was assessed to certain heirs, William Miller heirs; the case regards these "heirs" as "persons" entitled, under Chapter 40, Section 12, to notice; and therefore in effect holds that each was entitled to *notice* as an owner actually taxed; whereas in the present case the estate was not taxed to a person, or persons, but to the estate of the deceased and so, as we have above pointed out, did not require notice under Chapter 60, Section 13; the case was decided on Chapter 40, Section 12, Rev. Stat. R. I. (1857), which section is the same as said Chapter 60, Section 13, Gen. Laws, 1909, except that in said Section 13 the words "or personally served on him," are added. This section refers to notice to resident persons taxed. Therefore, *Thurston* v. *Miller* is not decisive of the present case; we find nothing therein which in any way disturbs our conclusion as to the questions raised in the case before us.

*A. B. Crafts, Elmer S. Chace, City Solicitor, Oscar L. Heltzen, Assistant City Solicitor*, for petitioners.