## PROVIDENCE COUNTY.

### DAVID WEAVER *vs.* PERRY ARNOLD.

A lot of land in Providence was devised to A. for life, remainder to B. and C. in fee. Pending the life estate, B. mortgaged his interest to D. While the title remained thus, the collector of taxes levied on the lot, and after advertisement sold " the right, title, and interest of A., B., and C. in and to an undivided seven eighths part," and subsequently, for another tax, levied again, and after advertisement sold " the right, title, and interest of A., B., and C. in and to three undivided eighths part." No notice of the sales was given by the collector to D., and D. was the purchaser at both sales.

*Held,* under the provisions of Pub. Stat. R. I. cap. 42, §§ 4, 6, and cap. 44, §§ 8, 10, 12, that

the sales were void. As to annual taxes, the estate of the life tenant is first liable. As to both tax levies, the effect of the course pursued was to throw a disproportionate charge on A. and C., and to relieve *pro tanto* B. and D., thus selling one man's estates for another's taxes.

C. filed a bill in equity against D. to obtain a reconveyance.

*Held*, that the bill could not be sustained. Equity will not interfere to remove a cloud upon title in favor of a party out of possession, claiming under a legal title against his antagonist who is in possession under the written title which makes the cloud. The remedy at law is sufficient.

BILL IN EQUITY for a reconveyance of realty and the removal of a cloud upon title. On demurrer to the bill.

*June* 20, 1885. DURFEE, C. J. This is a suit in equity to vacate a tax title which the defendant claims to have acquired in a lot of land in the city of Providence. The case set forth in the bill, which is demurred to, is as follows, to wit: The land formerly belonged to one Solomon Arnold, who died in 1873, leaving a will by which he devised it for life to his widow, Phœbe Arnold, and after her in fee simple in remainder to the complainant and one Olin S. Aldrich. Phœbe Arnold, after the death of Solomon, had used and enjoyed the land until her death, March 10, 1884. Olin S. Aldrich mortgaged his interest prior to 1878, to the amount of $2,100, to the defendant, by five different mortgages, which were all duly recorded. After the death of Solomon Arnold the annual taxes on the lot were assessed to " Solomon Arnold, Phœbe Arnold, executrix," and previously to 1880 had been paid by her. In 1880 a sewer tax and the usual annual tax were assessed on the lot, and were allowed to remain unpaid. On the last day of March, 1881, the collector of taxes, on account of the non-payment of the sewer tax, after advertisement and notices to Phœbe Arnold, Olin S. Aldrich, and David Weaver, the complainant, sold at public auction " all the right, title, and interest of the said Phœbe Arnold, Olin S. Aldrich, and David Weaver in and to an undivided seven eighths part " of said lot to the defendant for $195.21, being the amount of sewer tax with interest and expenses, and afterwards, April 5, 1881, gave the defendant a deed purporting to convey the estate sold to him in fee simple. And on June 16, 1881, the collector of taxes, on account of the non-payment of the annual tax, after advertisement and notices, sold at public auction " all the right, title, and interest of the said Phœbe Arnold, David Weaver, and Olin S. Aldrich in and to

three undivided eighths part " of said lot to the defendant for $97.67, being the amount of the tax with interest and expenses, and afterwards, June 18, 1881, gave the defendant a deed purporting to convey the estate sold to him in fee simple.  At the time of these sales the complainant was living, in sickness and extreme poverty, in Windham, Connecticut, having removed from the city of Providence, where he had previously lived, in 1880, and he received no notice of the sale, though it is not alleged that notices were not mailed to him as required by the statute.  The defendant is now in possession of the land, claiming it under the tax titles, and denying that the complainant has any right therein, though the complainant has offered to reimburse him for the sums paid by him for taxes, as aforesaid, or for his equitable portion thereof, and to pay any other legal charges on the estate incurred by him.

The first ground on which the complainant asks relief is that the sales were illegal and void.  The statute in regard to the assessment of the usual annual taxes provides, " Taxes on real estate shall be assessed to the owners." . . . " Estates in possession of a tenant for life may be taxed to the tenant for life, who, for the purpose of taxation, shall be deemed the owner."  Gen. Stat. R. I. cap. 39, §§ 4, 6 ; Pub. Stat. R. I. cap. 42, §§ 4, 6. The statute in regard to the collection of such taxes by sale, provides, " In case of a life estate, the interest of the tenants for life shall first be liable for the taxes."  Gen. Stat. R. I. cap. 41, § 8 ; Pub. Stat. R. I. cap. 44, § 8.  The statute authorizing assessments for sewers in the city of Providence,[1] provides that the assessments " shall be collected as the ordinary taxes of the city are collected."  The complainant contends that, in pursuance of these provisions, the interest of the life tenant ought to have been first sold for the satisfaction of the taxes, the interest of the remainder men being liable only in case of a deficiency."

We think there can be no question but that the complainant's claim is correct in regard to the ordinary taxes.  The provisions recited clearly show that it is the intention of the General As-

[1] Pub. Laws R. I. cap. 313, § 6, of March 28, 1873, " An act establishing a board of Public Works in the city of Providence."

sembly that the life tenant, who enjoys the use or income of the land, shall pay the taxes on it during the continuance of his estate, and that, if he neglects to pay them, his life estate shall be sold for their payment before any resort is had to the reversion or remainder. The provision in regard to the sale is not directory merely, but imperative, being manifestly intended for the benefit of the reversioners or remainder men, and therefore, if it be disregarded, the reversioners or remainder men have a right to insist that as to them the sale is illegal and void. It is not so clear, however, in regard to the sewer tax, that the life estate must first be sold; for there is no provision that sewer taxes shall be assessed to the life tenants, the direction being that the assessments shall be on the estates themselves at the rate of sixty cents for each front foot, and one cent for each square foot, extending back not exceeding one hundred and fifty feet. It may be argued that, inasmuch as the assessment is for a permanent benefit, it cannot have been intended that it should fall primarily on the life tenant. We do not find it necessary, however, to decide this point; for if the life estate is not to be sold first, then the sale is to be according to the general provision, which we think was not duly observed in the case at bar. The general provision is that, " In all cases when any parcel of real estate is liable for payment of taxes, so much thereof as is necessary to pay the tax, interest, cost, and expenses shall be sold by the collector," etc., in the manner there prescribed. Gen. Stat. R. I. cap. 41, § 10; Pub. Stat. R. I. cap. 44, § 10. It will be observed that what ·is authorized to be sold is so much of any parcel of real estate, liable for payment of taxes, as is necessary to pay the taxes, etc. Under this authority the collector might, if he had given notice to the defendant as mortgagee, as provided by § 12,[1] have sold so much of the entire estate, including the mortgagee's interest, as was necessary to pay the tax and assessment.

---

[1] As follows, Pub. Stat. R. I. cap. 44, § 12 :—

" In case the collector shall advertise for sale any property, real, personal, or mixed, in which any person other than the person to whom the tax is assessed has an interest, he shall, provided the interest of such other person appears upon the records of the town, leave a copy of the notice of such sale at the last and usual place of abode, or personally with such other person, if within this state, twenty days prior to the time of such sale."

If he had so sold, the burden would have fallen proportionately on all interests, and the sale, without doubt, would have been valid. He did not so sell, but advertised to sell only the right, title, and interest of Phœbe Arnold, Olin S. Aldrich, and the complainant, and sold at the two sales their entire right, title, and interest only, the mortgagee's interest remaining intact. Now we have seen that the mortgages, which were duly recorded, covered only the undivided moiety in remainder of Olin S. Aldrich. Manifestly, therefore, if this moiety was no more than sufficient to pay the mortgages, the effect of the sale, if sustained, was to throw the burden of the entire tax upon the interests of Phœbe Arnold and the complainant. And if this moiety was more than sufficient, nevertheless the effect was to charge the other interests disproportionately, and *pro tanto* to exonerate said moiety of a part, at least, of its proper share of the burden. In other words, the effect was to sell one man's estate to pay more or less of another man's taxes. We do not think the statute authorizes this, or that it would be constitutional if it did authorize it. The statute ·in § 10, as we construe it, authorizes sales for taxes subject to two limitations, namely : *first*, that only the estate which is liable for the taxes shall be sold ; and *second*, that only so much thereof shall be sold as is necessary to pay the taxes for which it is liable. We think, therefore, the collector exceeded his authority when he adopted a mode of sale by which, in consequence of its exemption of the mortgagee's interest, the complainant's estate was sold for more than its own ·taxes. The injury. to the complainant is patent. · It is impossible to say that, ·if the mortgagee's interest had been included, it would have been necessary to sell his entire estate. Indeed, it is scarcely conceivable that in such a sale such a result would have occurred, if there had been other bidders than the defendant, without collusion. Our conclusion is that the sales, and consequently the conveyances under the sales, were, as against the complainant, illegal and void.

The complainant contends that, notwithstanding the invalidity of the sales, the conveyances under the sales create a cloud upon the estate which he is entitled to have removed. The defendant, on the other hand, contends that, if the sales and conveyances were void, the complainant has an adequate remedy at law, and

cannot maintain his suit.    We think the defendant is right. ⌐We think it is well settled that a court of equity will not entertain a suit for the removal of a cloud in favor of a party out of possession claiming under a legal title against a party in possession under the deed or other written or record title which is supposed to constitute the cloud.    In such a case there is no necessity for the exercise of the equitable jurisdiction, as the validity of the disputed title can be determined at law.⌐ *Apperson & Co.* v. *Ford et al.* 23 Ark. 746, 756, and cases there cited ; *Orton* v. *Smith,* 18 How. U. S. 263 ; *Herrington* v. *Williams,* 31 Tex. 448 ; *Clark et al.* v. *Covenant Mut. Life Ins. Co.* 52 Mo. 272 ; *Gage* v. *Schmidt,* 104 Ill. 106 ; *Gould* v. *Sternburg,* 105 Ill. 488 ; *Polk* v. *Pendleton,* 31 Md. 118, 124.    The defendant here is in possession, keeping the complainant out, and there is therefore nothing to prevent the complainant from vindicating his title at law.

In this view it is unnecessary to consider whether the complainant would still have a right to redeem the estate if the sales had been valid ; for very clearly, if the estate did not pass to the defendant, the complainant cannot redeem it from him.    The bill will, therefore, be dismissed with costs.

*Wilson & Jenckes,* for complainant.

*Benjamin N. Lapham,* for respondent.