DECISION
This matter is before the Court for decision following the parties' submission of an agreed statement of facts and documents and memoranda. In June of 1934, Thomas and Anna Reilly deeded lots 64, 65, and 66 on Town of Coventry Assessor's plat 6 to Emma Devine and Hazel Packham as cotenants (the Property).[1]
Plaintiff Charles Devine is the grandson of Emma Devine. Defendants Eugene Devine and Ellen Murphy are also Emma's grandchildren and cousins of plaintiff Charles Devine. Upon Emma Devine's death in 1957, she was still the record owner of a one-half interest in the Property. There is no evidence that Emma Devine's estate was ever probated or that an executor or administrator was ever appointed. According to the land evidence records, the Property continued to be held in the names of cotenants Emma Devine and Hazel Packham until the 1974 sale, when a portion of each of their interests were sold. Emma Devine and Hazel Packham continued to hold interests in the Property, together with Suburban Land Co, the purchaser of the tax title at the 1974 tax sale, until the 1979 tax sale when the remainder of the interests of Emma Devine and Hazel Packham were sold.
According to the Coventry tax roles, as of 1970, plaintiff Charles Devine was assessed and assumed the taxes on what he apparently thought was Emma Devine's full 1/2 interest in the Property. In reality, between 1970 and 1979, plaintiff Charles Devine was only billed for twenty percent of the taxes on the Property. From 1979 to 1993, plaintiff Charles Devine was billed for a full fifty percent of the taxes owing on the Property. It is undisputed that plaintiff Charles Devine paid all of the taxes assessed to him from 1970 to 1993. Additionally, in 1978 and 1981, the Coventry Tax Collector informed plaintiff Charles Devine that, according to its records, he still held a one-half interest in the Property.
Hazel Packham, however, had failed to pay the taxes on her fifty percent interest in the Property which were assessed to her. As a result, in 1974, the Town of Coventry advertised that, on February 8, 1974, "[l]ots 64, 65, 66, [p]lat 6, taxed to Hazel Pacham," would be auctioned off for back taxes owed. No mention of the interests of Emma Devine or plaintiff Charles Devine appeared in these advertisements. The tax deeds issued pursuant to the sale, however, purported to convey to the purchaser portions of the Property held as a matter of record by Emma Devine and assessed to Charles Devine. Third-party defendant Suburban was the highest bidder at this sale. On March 4, 1974, Coventry Tax Collector Audry H. Cornell issued three tax collector's deeds to Suburban Land Company which granted it an "undivided 1/16 interest of all the right, title and interests of the said Emma Devine and Hazel Packham . . . in and to that certain tract or parcel of land . . . located in the Town of Coventry, and laid out and designated as lot 64 Plat 6", "an undivided 1/256 interest of all right, title and interest of the said Emma Devine and Hazel Packham . . . in and to that certain tract or parcel . . . located in the Town of Coventry, and laid out and designated as lot 65, Plat 6", and "an undivided 1/128 interest of all the right, title and interest of the said Emma Devine and Hazel Packham . . . in and to that certain tract or parcel of land . . . located in the Town of Coventry laid out and designated as lot 66, plat 6." All three deeds provide that "Audry H. Cornell, Tax Collector, did cause notice of said levy and time and place of sale to issue to Emma Devine, 160 Smith Street, Cranston, Rhode Island, and Hazel P. Packham, 160 Smith Street, Cranston Rhode Island, upon whom said notices were duly served twenty days previous to said day of sale; and to all others having any right, title, and interest in and to said estate by publication."
After this first sale, Hazel Packham continued to fail to pay her assessed share of taxes on the Property. As a result, a second tax sale took place in 1979. Again the Town of Coventry advertised that, on February 23, 1979, "[l]ots 64, 65, 66, [p]lat 6 taxed to Hazel P. Packham," would be auctioned off for back taxes. This advertisement, like the earlier 1974 advertisement, did not mention the interests of Emma Devine or Charles Devine. The tax deeds issued pursuant to this tax sale, however, again purported to convey to the purchaser the balance of the Property held as a matter of record by Emma Devine and assessed to Charles Devine. Third-party defendant Suburban was also the highest bidder at this sale. On March 12, 1979, Coventry Tax Collector Audry H. Cornell issued a fourth tax collector's deed to Suburban Land Company granting it "all the right, title and interest of the said Hazel P. Packham and Emma Devine, . . . said interest being an undivided 15/16 interest of the whole interest, in and to the certain tract or parcel . . . located in the Town of Coventry and laid out and designated as lots 64, 65, 66, Plat 6". This deed also stated that Tax Collector Audry H. Cornell did "cause notice of said levy and time and place of sale to issue to Hazel P. Packham, 160 Smith Street, Cranston, Rhode Island; Emma Devine, 160 Smith Street, Cranston, Rhode Island and Suburban Land Company, 79 Coolridge Road, Greenville, Rhode Island upon whom said notices were duly served twenty days previous to said day of sale; and to all others having any right, title and interest in and to said estate by publication."
Suburban foreclosed all rights of redemption on the Property in 1980 in Suburban Land Co. v. Hazel Packham, Emma Devine andtheir spouses, if any there be, if living, and if deceased, theirheirs, assigns and devisees, KC/MP No: 80-35 after publishing a notice in the Providence Journal which was addressed to "all whom it may concern and to Hazel P. Packham, Emma Devine, and their spouses if any there be, if living, and if deceased, their heirs, assigns and devisees." Additionally, in a certificate of service filed in KC/MP-80-0035, counsel for Suburban stated that "he served the citation at issue by mail to each respondent named therein whose address was furnished by petitioner [Suburban] or otherwise known by certified mail return receipt requested". No receipts are contained in the file. Also absent is any record as to who was served by certified mail or what address appeared on the mailed citations. According to third-party defendant Suburban Land Company, this service was made upon Emma Devine at her last known address. No personal notice of this foreclosure petition is alleged to have been given to plaintiff Charles Devine directly. Then on May 7, 1985, Suburban conveyed its interest in the Property to Fagan Door Corporation by warranty deed. Since this date, Fagan Door has occupied and made exclusive use of the entire Property.
In his original complaint, plaintiff Devine claimed that he owned a one-third interest in the Property and that his interest combined with his cousins' interests equaled a one-half interest in the Property. Plaintiff Devine sought a court-ordered partition of the real estate, if possible, or, in the alternative, the sale of the Property so that the proceeds could be divided with thirty-three percent being awarded to him, seventeen percent being awarded to defendants Eugene Devine and Ellen Murphy, and fifty percent being awarded to defendant Fagan. In his first amended complaint, plaintiff Devine changed his claimed interest from one-third to one-quarter.
Defendants Eugene Devine, Ellen Murphy, and Fagan Door answered the complaint, and Fagan Door filed a third-party complaint against Suburban Land Company alleging breach of the covenants contained in the Suburban-Fagan warranty deed. Plaintiff Devine then filed a second amended complaint in which he added a second count seeking reimbursement from defendants Eugene Devine and Ellen Murphy respectively for the twenty five percent of the taxes due on their one-fourth share of the Property and which Charles Devine allegedly paid. In this second count, plaintiff Devine also sought fifty percent of the reasonable rental value of the Property from Fagan for the years 1985 to 1993.
Plaintiff Devine later filed a third amended complaint which added an additional request that the court order foreclosing the right of redemption issued in KC/MP 80-0035 be invalidated. Lastly, plaintiff Devine again altered his requested relief in his reply memorandum of law because it became apparent that from 1973 to 1979 Charles Devine only had been assessed and paid twenty percent of the taxes on the Property. As a result, Emma Devine's interest had allegedly fallen into arrears. Thus, plaintiff Charles Devine requested that this Court order that he owns a twenty percent interest in the Property, that Fagan owns an eighty percent interest in the Property, that Eugene Devine and Ellen Murphy have no interest in the Property and that plaintiff Devine is owed the extra thirty percent of taxes above and beyond his alleged interest which he paid from 1979 to 1993. Finally, plaintiff Devine altered his prayer for relief by reducing the percentage of the reasonable rental value he sought from Fagan from fifty percent to twenty percent for the years 1985 to 1993.
After denying that plaintiff Devine owned a one-third interest in the Property, defendants Eugene Devine and Ellen Murphy admitted all the allegations contained in plaintiff Devine's first amended complaint and second amended complaint except that they neither admitted nor denied owing tax contributions to plaintiff Devine. They apparently never answered plaintiff's third amended complaint. In these answers, defendant Devine and Murphy raised no defenses. In its answer, defendant Fagan Door simply left plaintiff Devine to prove his claim, and raised no affirmative defenses. While the record contains no answer by Suburban Land Co. to Fagan Door's third-party complaint, Suburban admitted in response to plaintiff Devine's request for admission # 8 that it sold the Property to Fagan Door by Warranty Deed. Additionally in a memorandum filed by third-party defendant Suburban, it asserts that it had full title to the Property and that the foreclosure of the right of redemption is valid and binding because plaintiff Devine, whose name did not appear in a title search, was served notice derivatively through service of Emma Devine and via publication.
The parties have submitted the question of who has what interest in the Property to this Court for decision based on an agreed statement of facts and documents and the parties' respective memoranda of fact and law.
The primary issue to be addressed by this Court is whether the 1974 and 1979 tax sales by the Town were valid. The Rhode Island Supreme Court has held that those statutes giving authority for the sale of land for failure to pay taxes are to be strictly construed and applied in favor of the owner of the property. Parker v. McCue, 54 R.I. 270, 172 A. 725 (1934). In determining whether the Town of Coventry complied in this case with the statutory requirements for tax sales, therefore, strict compliance with § 44-9-1 et seq. (the Rhode Island statute governing tax sales) is required.
Section 44-9-9 provides that [b]efore the sale the collector shall . . . cause to be published in some newspaper published in the town . . . a statement concerning the time and place of sale,the real estate liable for payment of taxes, and the name of theperson against whom the real estate was assessed. R.I. Gen. Laws § 44-9-9 (emphasis added). In addition, R.I. Gen. Laws §44-9-10 (a) provides that "[w]hether or not the person to whomthe estate is taxed be a resident of this state, the collector shall, in addition to the foregoing [§ 44-9-9's posted and published notice], notify the taxpayer of the time and place of sale either by registered mail or by certified mail sent postpaid to the taxpayer's last and usual place of abode not less than twenty (20) days before the date of the sale or any adjournment thereof, or be left at the taxpayer's last and usual place of abode or personally served" (emphasis added).
The plain and unambiguous language of § 44-9-9 requires that, prior to a sale of real estate for back taxes, the Town must publish a notice of the sale which precisely identifies the real estate that is liable for the taxes owing. The notice also must name the person against whom the real estate was assessed for taxes. As applied to the instant case, this statute required the Tax Collector, prior to selling any interest in the Property held by Emma Devine or her heirs, to state affirmatively in the published notice of sale that Emma Devine's interest in the Property was liable for the payment of taxes, or at a minimum that more than Hazel Packham's interest was so liable. In addition the statute required the notice to name plaintiff Devine as one of the persons against whom the real estate was assessed.
In addition to the requirements for notice by publication in § 44-9-9, the plain and unambiguous language of § 44-9-10
(a) requires notice by registered or certified mail to thetaxpayer. See also Ashness v. Tomasetti, 643 A.2d 802, 805 (R.I. 1994) cert. denied, 115 S.Ct. 425, 130 L.Ed.2d 339 (1996)(noting that § 44-9-52 mandates notice to the taxpayer when the Blackstone Commission was selling property for failure to pay taxes.) A taxpayer is "any person who pays a tax" (Webster's NewUniversal Unabridged Dictionary 1870 (2d ed. 1983)) or "one from whom government demands a pecuniary contribution towards its support" (Black's Law Dictionary 1459 (6th ed. 1990)). The notice requirement of R.I. Gen. Laws § 44-9-10 (a), therefore, requires registered or certified mail notice to the persons who have been assessed and/or paid taxes on property being sold for nonpayment of taxes. As plaintiff Charles Devine was assessed and paid taxes on the Property, § 44-9-10 (a) required the Tax Collector to notify him by regular or certified mail at his last and usual place of abode of the time and place of the tax sale. No such mail notice was required as to any other party with an interest in the land to whom taxes were not assessed (other than mortgagees) including any other heirs of Emma Devine or her estate. See § 44-9-11. Furthermore, In Re Crafts, 41 R.I. 63,102 A. 753 (1918), which allows a Town to serve notice on the estate of a decedent if property within the estate is being sold for back taxes, is not an exception to the statutory notice provisions, for in Crafts the taxes were levied against the estate. Thus the taxpayer in Crafts was the estate, so publication notice on the estate was sufficient.
Here the tax deeds issued by the tax collector in 1974 and 1979 purported to convey to Suburban Land Company (1) the interest of Hazel Packham and (2) the interest of Emma Devine, as assessed to plaintiff Charles Devine who had been a taxpayer on the Property from 1970 through the dates of each tax sale. Because the deeds purported to convey the interest of Emma Devine, which was assessed by the Town to Charles Devine, §44-9-9 required that the published notice identify Emma Devine's interest as being sold at tax sale and name Charles Devine, as a person against whom the sold Property was assessed. The published notices of the 1974 and 1979 sales, however, only listed the estates taxed to Hazel Packham. Compare, Exhibits G with Exhibits H 1-3 and I. The notices did not include either Emma Devine or Charles Devine's name, nor any reference to Emma Devine's interest in the Property and therefore were improper and in violation of the notice requirements of § 44-9-9. The Town also was required to serve notice of the impending sale on plaintiff Devine personally by certified or registered mail under § 44-9-10 (a) due to his status as a taxpayer. Not only was plaintiff Devine given no general notice of the pending sale, as might have been provided if § 44-9-9 been complied with, but there is no record evidence to support a conclusion that plaintiff Charles Devine received personal notice under §44-9-10 (a).
Rather, all the evidence of record establishes that no such notice was given to plaintiff Devine. First, the advertisements for both the 1974 and 1979 tax sales that were published ostensibly pursuant to § 44-9-9 did not name Charles Devine as a party to whom the Property for sale was assessed nor did they indicate that Emma Devine's interest in the Property was being sold. Secondly, the Tax Collector's deeds only state that Emma Devine, Hazel Packham and Suburban Land Company were served with personal notice. Thirdly, by letter dated December 4, 1978, Tax Collector Audry H. Cornell assured plaintiff Devine that she had "placed the balance of Hazel Packham's interest (which is 7/16) up for tax sale on February 23, 1979. At the present moment you own a 1/2 interest, Hazel Packham has 7/16 and Suburban Land has 1/16." Instead of serving notice on Charles Devine (the assessed taxpayer), the Town noticed Emma Devine, who had died in 1957, and had not appeared in the tax records since 1970. Thus, it is clear that plaintiff Devine did not receive the statutory notice he was entitled to receive under either §§ 44-9-9 or44-9-10 (a). Indeed, the notice he in fact received from the Tax Collector was that only Hazel Packham's interest and not that of Emma Devine was being sold at the tax sales. See Exhibit L (Letter dated December 4, 1978 from Tax Collector Audry H. Cornell.)
The next question is whether the defects in notice are sufficient to invalidate the tax titles issued pursuant to the tax sales in 1974 and 1979. Rhode Island Gen. Laws § 44-9-35
provides that "[n]o tax title shall be held to be invalid by reason of any error or irregularity which is neither substantial or misleading, whether the error or irregularity occurs in the proceedings of the collector or the assessors or in the proceedings of any other official or officials charged with duties in connection with the establishment of the tax title." The failure to notify a taxpayer of the impending sale of property is both substantial and misleading. See L. BraytonFoundry Building v. Santilli, 676 A.2d 1364 (R.I. 1996)(Supreme Court decision upholding a superior court judgment denying an order foreclosing rights of redemption where notice was not sent to property's taxpayers at their last and usual place of abode);Williams v. City of Providence, 641 A.2d 1328 (R.I. 1996)(where the Supreme Court upheld a Superior Court judgment invalidating a tax sale where the City of Providence, record owner of the land, did not receive notice of the attempted sale); McGuigan v.Fitzpatrick, 199 A. 448, 60 R.I. 490 (1938) holding that a tax sale was not binding on a property owner and an owner of a note and mortgage on the property when, while the property owner was given notice, the mortgage holder was not given notice; andThurston v. Miller, 10 R.I. 358 (1872)(where an entire tax sale was voided because several heirs had rights in an estate, but only one heir was notified of the sale.) The Supreme Court recognized in Ashness v. Tomasetti, 643 A.2d 802, that it is well settled that the failure to comply fully with [these] statutory-notice provisions invalidates an attempted tax sale and that Due Process requires notice reasonably calculated to apprise interested parties of the pendency of the tax sale. Here the defects in notice were clearly substantial and misleading because the only notice ever given to Charles Devine informed him that Emma Devine's interests were not being sold at either the 1974 or 1979 sales.
The next question is whether the invalidity in the tax titles resulting from the absence of proper notice which was substantial and misleading is irrelevant in light of Suburban's foreclosure of the right of redemption in the Property in 1980. Section44-9-24 provides that "the title conveyed by a tax collector's deed shall be absolute after foreclosure of the right of redemption by decree of the superior court as provided in this chapter." R.I. Gen. Laws § 44-9-24. Under Rhode Island law, "the tax collector's deed is in the nature of an independent grant from the sovereign which bars or extinguishes all former titles, interests and liens not specifically accepted. The title conveyed is absolute, subject only to defeasance by redemption."See Williams v. City of Providence, 641 A.2d 1328 (R.I. 1994);Picerne v. Sylvestre, 113 R.I. 598, 618, 324 A.2d 617 (1974).
Under recent pronouncements of the Rhode Island Supreme Court, however, it appears that absolute title only can be conveyed if the underlying tax sale was valid. In Ashness v.Tomasetti, 643 A.2d 802 (R.I. 1994) cert denied, 115 S.Ct. 425, 130 L.Ed.2d 339 (1996), for example, the Supreme Court upheld a Superior Court decision vacating a default judgment foreclosing rights of redemption because the underlying tax sale was invalid due to lack of proper notice to interested parties. In that case, the Supreme Court affirmed the trial court's finding that a default judgment foreclosing rights of redemption was invalid where a mortgagee of the property was entitled to notice of the underlying sale under R.I. Gen. Laws § 44-9-11 but did not receive such notice. In L. Brayton Foundry Building v. Santilli,676 A.2d 1364 (R.I. 1996), the Rhode Island Supreme Court upheld a Superior Court judgment denying an order foreclosing the rights of redemption, and invalidated a tax sale where the tax collector had not undertaken "reasonable efforts" to determine a defendant taxpayer's last and usual place of abode, but had merely mailed notice to an address listed in the property's four year old deed.
The Supreme Court also has suggested that equity allows the vacating of an order foreclosing rights of redemption where the notice of the sale at issue was so defective as to be a substantial irregularity that is misleading. See, Murray v.Schillace, 658 A.2d 512, 514 (R.I. 1995) (finding that sending notice with the former property owner's name spelled as "Shillace" instead of "Schillace", was not so substantial or misleading as to mandate invalidation of a tax title under §44-9-35.) See also Zeus Realty Co. v. Jaral Realty, 653 A.2d 70
(R.I. 1995) (per curiam) (where the Supreme Court upheld a superior court order vacating a default judgment which foreclosed rights of redemption to property sold at a tax sale under R.I. Gen. Laws §§ 44-9-24 and 29 because notice of the petition to foreclose the rights of redemption was invalid in that it was premature). This notice exception to the general rule that foreclosure of redemption rights renders a tax title absolute has been judicially carved because it is well-established that no tax sale is binding if a party entitled to notice did not receive notice.
Under this exception, the invalidity of the 1974 and 1979 tax titles requires vacating the 1980 order foreclosing rights of redemption. First, the tax sale was invalid because the statutory notice required in §§ 44-9-9 and 44-9-10 was not supplied to plaintiff Devine. Second, the failure by the Town to give notice in any form to plaintiff Devine coupled with the Town's affirmative statement to plaintiff Devine that his interests were not being sold renders the sale substantially irregular and misleading under § 44-9-35. Joint Exhibit L. Third, defendant Suburban did not give notice to plaintiff Devine of its foreclosure action, and equity will not allow a defendant to foreclose the rights of redemption of a party without noticing it, even if not strictly required under § 44-9-1 et seq., when the party was entitled to notice of the underlying sale and did not receive notice of it. It could be argued that third-party defendant Suburban should have had notice of the defective tax deeds because they conflicted with the advertised sale by conveying the interest of Emma Devine which had had not been listed in the advertisements for the sales. In addition, had third-party defendant Suburban checked the Coventry tax records to confirm the status and nature of Emma Devine's interest, it would have discovered that Charles Devine, not Emma Devine, was listed as a taxpayer on the Property.
As a result of the invalidity of the tax sale and the order foreclosing the rights of redemption, it next must be determined in whom the Property vests. In both Ashness v. Tomasetti andThurston v. Miller, the Supreme Court stated that "the failure to serve an interested party with notice of a tax sale invalidates that sale with respect to all interested parties, despite the fact that at least one of the parties did receive legal or actual notice of the proceeding". Ashness, 643 A.2d at 811 (citation omitted); Thurston v. Miller 10 R.I. at 365 (emphasis added). Accordingly, title to the Property in its entirety reverts back to the estates of Hazel Packham and Emma Devine subject to all the rights, interests, and encumbrances that existed as of the 1974 and 1979 tax sales. Title does not vest in plaintiff Devine because he has failed to present any evidence that he is an heir at law of Emma Devine (although no one apparently disputes that fact) nor his actual legal percent interest in the Property as an heir. As a matter of fact, plaintiff Devine has at different times claimed to have owned a one-fourth, a one-third, and a one-fifth interest in the Property. Compare plf. first complaintwith plf. first amended complaint and plf. reply memorandum. As a result, plaintiff Devine's request for reasonable rents on the Property, reimbursement for past taxes paid, and partition are denied. Finally, as to the third-party complaint against Suburban Land Company, it is this Court's ruling that since it is undisputed that Suburban sold the Property to Fagan by warranty deed and that it was breached, Suburban is liable to Fagan Door for breach of warranty. The issue of damages, if any, has been preserved and remains for trial.
Conclusion
In conclusion, 1974 and 1979 tax sales and tax titles issued pursuant thereto are held to be void, with title reverting back to the estates of Hazel Packham and Emma Devine. Plaintiff Devine's request that this Court invalidate the 1980 order in KC/MP 80-0035 foreclosing rights of redemption on the Property is granted. All other requests by plaintiff Devine are hereby denied. Judgment shall enter for Fagan Door against Suburban Land Co., on its third party complaint for breach of warranty as to liability only with the issue of damages reserved for trial. Counsel shall confer and agree upon an appropriate form of order and judgment, as to this case and KC/MP 80-0035, reflective of this Court's decision, and submit it to the Court forthwith for entry.
[1] There is some confusion in the record as to whether Hazel's last name is Pachem or Packham. For the purposes of this decision, the name Hazel Packham will be used. Compare Agreed Statements of Facts and Exhibit A.